UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

SYMYX TECHNOLOGIES, INC.,

    Plaintiff,                                            Case No. 06-12632

v.

                                                     Hon. John Corbett O'Meara

STARGATE MOBILE L.L.C.,

    Defendant.
_____/

**OPINION AND ORDER GRANTING DEFENDANT'S MOTION TO
DISMISS AND COMPEL ARBITRATION AND DENYING
PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT AS MOOT**

Before the court are Plaintiff's motion for partial summary judgment, filed August 7, 2006, and Defendant's motion to dismiss and to compel arbitration, filed September 11, 2006. Both motions are fully briefed. The court heard oral argument on October 12, 2006, and took the matter under advisement. For the reasons set forth below, the court grants Defendant's motion.

**BACKGROUND FACTS**

Plaintiff, Symyx Technologies, Inc., and Defendant, Stargate Mobile, L.L.C., entered into a Development, License and Supply Agreement on January 26, 2006. The agreement provided for the parties to conduct a "Development Program" to combine the proprietary technology of each company. Symyx was to contribute a device known as an oil condition sensor, which measures the properties of oil when it is in a motor vehicle engine. For example, the information provided by the sensor may be used to determine when to change the vehicle's oil. Symyx's oil sensor was to be included in a wireless communications package to be provided by Stargate. The parties agreed that Stargate would incorporate Symyx's sensor into Stargate's wireless

communications package and market the package to commercial truck manufacturers.

The agreement (attached to the complaint as Exhibit A) provided that "in consideration of the conduct of the Development Program" Stargate agreed to pay Symyx $50,000 upon execution, $975,000 on June 1, 2006, and $975,000 on December 1, 2006. Agreement at § 5.1. Stargate did not pay the first two installments under the agreement. Stargate claims that it withheld payment as a result of a dispute related to Symyx's approach to one of Stargate's existing customers. Stargate contends that as both parties met with this first customer, Mark Uhrich of Symyx "made certain statements which had the effect of separating the Symyx portion of the Stargate Offering from the overall Offering, such that Symyx was perceived to be usurping the TACOM opportunity for itself, instead of presenting a unified offering as contemplated by the agreement." Def. Br. at 2.

Stargate claims that it immediately objected to this conduct by Symyx, and that Uhrich admitted in a telephone conference that he had "made a mistake." Stargate alleges that the parties then agreed that an amendment to the agreement would be drafted by Symyx, in order to prevent any further misunderstandings. According to Stargate, Symyx never provided a draft amendment, but continued to demand payment under the agreement. Stargate contends that it withheld payment pending the delivery of a mutually acceptable amendment to the agreement.

Symyx ultimately terminated the agreement as a result of Stargate's nonpayment on June 14, 2006. Symyx then brought this action, also on June 14, 2006, and filed a motion for partial summary judgment on August 7, 2006. Stargate opposes Symyx's motion and has filed its own motion to compel arbitration.

## LAW AND ANALYSIS

The agreement contains a dispute resolution clause, which provides that the if the parties have a dispute "relating to the interpretation or performance of this Agreement," the parties "shall meet to attempt in good faith to negotiate a resolution of the dispute prior to pursuing other available remedies." § 13.10.1   The agreement further provides that

> If within thirty (30) days of such meeting the parties have not succeeded in negotiating a resolution of the dispute, such dispute shall be submitted to final and binding arbitration before a single arbitrator as set forth in <u>Exhibit D.</u>

Agreement at § 13.10.2 (emphasis in original).

Symyx claims, however, that the dispute resolution clause did not survive its termination of the agreement.  Symyx contends that it terminated the agreement for cause pursuant to § 12.3.

> Either party may, without penalty, terminate this Agreement upon written notice to the other party in the event the other party materially breaches this Agreement and such breach remains uncured for sixty (60) days following written notice of breach by the nonbreaching party, provided, however, in the case of a failure to pay any amount due hereunder, such default may be the basis of termination fifteen (15) days following the date that notice of such default was provided to the breaching party.

Agreement at § 12.3.  The agreement provides that in "the event of termination or expiration of this Agreement, Sections 4.5, 5.4, 12.5, and 12.6 and Articles 1, 6, 7, 8, 11 and 12 shall survive such termination or expiration."  Agreement at § 12.6.  Symyx maintains that because the dispute resolution clause (§ 13.10) is not specifically designated as surviving termination, it has no effect.

It is clear that the court may only order arbitration if the parties agreed to it.  Whether an arbitration clause survives the termination of an agreement depends upon the intent of the

-3-

parties.  See, e.g., Virginia Carolina Tools, Inc. v. International Tool Supply, Inc., 984 F.2d 113, 119 (4th Cir. 1993) (arbitration clause did not survive after expiration of contract).  In this case, the failure to expressly provide for the survival of the arbitration clause – while providing for the survival of other sections of the contract – could suggest that the parties did not intend the clause to survive the agreement's termination.

Reading the agreement as a whole, however, it does not make sense that the arbitration clause does not survive termination simply because it was not expressly designated as surviving.  Several provisions of the agreement that one would expect to survive termination were not designated as such in §12.6.  For example, the "survival" clause of the agreement makes no mention of the integration clause (§ 13.3), the severability clause (§ 13.4), the choice of law clause (§ 13.5), or the attorney fee provision (§ 13.6).  It would be a strained reading of the agreement to suggest that these provisions do not survive termination merely because the agreement did not specifically designate them as surviving.  Indeed, Plaintiff is seeking attorney fees in this suit pursuant to § 13.6, suggesting that such a reading is not consistent with its intent.

Essentially, Plaintiff is arguing that the parties intended arbitration to be available only when a dispute arises that is not significant enough to warrant termination of the agreement.  Plaintiff's argument is not supported by the language of the parties' agreement.  The parties set forth a detailed, thirteen-paragraph dispute resolution process in an exhibit to their agreement.  (Exhibit D.)  Nothing in the arbitration provision (§13.10) or in Exhibit D suggests that the parties only agreed to arbitrate disputes if the contract was not terminated.

In the absence of a clear and express intent to limit arbitration to such situations, the court must enforce the parties' arbitration agreement.  See United Steelworkers of America v.

Warrior & Gulf Navigation Co., 363 U.S. 574, 584-85 (1960). "In the absence of any express provision excluding a particular grievance from arbitration, we think only the most forceful evidence of a purpose to exclude the claim from arbitration can prevail, particularly where, as here, the exclusion clause is vague and the arbitration clause quite broad." Id. See also AT & T Technologies, Inc. v. Communications Workers of America, 475 U.S. 643, 650 (1986) ("Doubts should be resolved in favor of coverage."); Fazio v. Lehman Bros., Inc., 340 F.3d 386, 392 (6th Cir. 2003) ("It is a well-established rule that any doubts regarding arbitrability should be resolved in favor of arbitration.").

### ORDER

Accordingly, IT IS HEREBY ORDERED that Defendant's September 11, 2006 motion to dismiss and compel arbitration is GRANTED.

IT IS FURTHER ORDERED that Plaintiff's August 7, 2006 motion for partial summary judgment is DENIED AS MOOT.

s/John Corbett O'Meara
UNITED STATES DISTRICT JUDGE

Dated:  October 13, 2006

I hereby certify that a copy of the foregoing document was served upon the parties of record on this date, October 13, 2006, by electronic and/or ordinary mail.

s/William Barkholz
Case Manager